CHRISTIAN *v.* THE COLUMBUS AND ROME RAILWAY COMPANY, and *vice versa.*

1. The particulars set forth in a declaration by way of inducement and as preliminary to the main facts constituting the plaintiff's cause of action, may be varied by amendment so as to accommodate these allegations to the evidence expected to be adduced. In this case the amendment was properly allowed, and did not bring in any new cause of action. The court did not err in overruling the demurrer to the same.

2. There was no error in granting a new trial on the 7th ground of the motion, nor in denying a new trial on the other grounds, save that this court does not decide whether the verdict as to defendant's liability was contrary to the evidence, inasmuch as that question turns alone upon the credibility of the defendant's witness Dixon. As there is to be another trial, the credibility of this witness is left open for determination by the jury before whom that trial is had, subject to the general power of the superior court to review its finding.

3. Where the value of a life terminated by violence is to be ascertained, evidence that the deceased person had engaged at different times in various pursuits, and of what he made or was capable of making in each of these, is relevant, although at the time of his death he had ceased for a number of years to act in one of

them, his capacity to pursue it not being impaired. What he had earned in it would not serve as a direct basis for estimating the value of the life, but might be looked to by the jury in estimating his capacity to command continuous, profitable employment should he cease to pursue the business vocation in which he was engaged when he was killed. Evidence that at that time he held the offices of postmaster and tax-collector, and of the amount of his income from the same, would also be relevant to show pecuniary loss for the unexpired term of office, but not to furnish a basis of direct compensation for any longer period.

4. There was no error in admitting the evidence offered and received as impeaching evidence of one of the defendant's witnesses. The ground for introducing such evidence was sufficiently laid.

5. It was not necessary in order to recover that the plaintiff should establish the allegations as to the unfitness of the defendant's agent and the *scienter* of the defendant, these matters not being the gist of the action.

6. A request to charge based upon the hypothesis that the defendant's agent killed plaintiff's husband in a quarrel " as an act of personal resentment" was properly refused, the evidence for the defence on this subject, if true, showing that the agent killed the deceased, not from resentment, but under circumstances which would make the homicide justifiable by the law of self-defence.

August 1, 1892.                                        *Judgment affirmed.*

Amendment. Damages. Evidence. Railroads. Before Judge MARTIN. Harris superior court. October term, 1891.

1. For the former report of this case see 79 *Ga.* 460. A demurrer had been sustained, and that decision was reversed. When the case came on for trial, plaintiff proposed to amend her declaration by striking therefrom the words " mental incapacity and insanity " (of Dixon, the agent of defendant, by whom it was alleged plaintiff's husband had been killed), and inserting in lieu thereof the words, "his unfortunate physical and mental temperament," so that the clause after such amendment would read, " who was wholly unfitted for said position of agent, by reason of his unfortunate physical and mental temperament." Also, to strike from the declaration the following words, "at times partially and at others wholly insane and afflicted with homicidal mania,"

and in lieu thereof insert, " being a dangerous man and wholly unfit to come in contact with the public and the customers of the company," so that the clause after amendment would read, "and as a result of the aforesaid affliction being a dangerous man and wholly unfit to come in contact with the public and the customers of the company." To the amendments defendant objected, upon the ground that it would be adding to the declaration a new and distinct cause of action. The objection was overruled and the amendments allowed. After the amendments had been made, defendant demurred specially to the following allegations in the declaration as amended : " who was wholly unfitted for said position of agent, he, the said Dixon, being a dangerous man by reason of prolonged disease, a confirmed dyspeptic, afflicted with hypochondria and melancholy, irascible, peevish, petulant, passionate," upon the grounds that these words and allegations were immaterial and surplusage, and because it was not alleged that the death of plaintiff's husband was caused or produced by reason of said allegations. It was alleged in the declaration that plaintiff's husband, while engaged in the peaceable and lawful pursuit of his business, entered the depot of defendant in a quiet, inoffensive and peaceable manner, to settle for and receive from defendant certain freight contained therein and consigned to him, and that Dixon, being the agent of defendant and then and there engaged with plaintiff's husband in the transaction of the business of defendant with her husband, such business being within the scope of Dixon's employment as agent of defendant, without reason or provocation, etc., shot and killed plaintiff's husband; and these allegations follow in the declaration the allegations above mentioned. The demurrer was overruled, and the defendant excepted to each of the foregoing rulings.

2. The plaintiff obtained a verdict for $12,999.94. Defendant moved for a new trial on various grounds in-

cluding those alleging that the verdict was contrary to law and evidence. Among the special grounds was one numbered seven. The court held that if plaintiff would write off from the verdict an amount equal to the interest at the rate of seven per cent., from the death of her husband to the trial of the case, then the motion would be granted upon the seventh ground; and that on failure so to write off, the motion would be granted on all the grounds. Whereupon plaintiff's attorneys wrote off from the verdict $4,314.94, being an amount equal to the interest contained in the verdict from the death of plaintiff's husband to the time of the trial, and the court granted a new trial solely upon the seventh ground. Plaintiff excepted to the granting of the motion upon that ground, and the defendant excepted to the overruling of the other grounds of the motion. The seventh ground was, because the court, after charging these words: "Now, in the event that you find that the company is liable to the plaintiff, then what is she entitled to recover? She will be entitled to recover the value of Mr. Christian's life reduced to dollars and cents, to a present cash valuation," charged as follows: "To do this you will ascertain what was the yearly value of Mr. Christian's services to his family in money. To find this you are to consider his capacity to earn money, and what he did produce from his own labor, skill or management, or all combined, per annum. From whatever you find that he could earn deduct what it cost him to produce this sum annually, including his personal expenses. The amount remaining you would multiply by the number of years he would probably have lived, and this you can find out from the tables which have been introduced, and from the testimony in the case as to what his age was at the time of his death. The table shows that a person of a given age would probably live so many years longer. That

you can find out from the Carlisle table. Now, as I said before, after you find out what he could earn, deduct from it what it cost him to produce this sum annually, including his personal expenses; the amount remaining you would multiply by the number of years he would probably have lived. When you have ascertained this sum, then in order to find the present cash value of the life of Mr. Christian, you would calculate the interest at seven per cent. upon one dollar for the number of years he would probably live, and to the interest thus found you would add the one dollar. You add the principal and interest together of one dollar. You would then divide the first amount, that is his yearly earnings, with his expenses and what it cost to produce it deducted from it, multiplied by the number of years that he would probably have lived. Find out that amount. Then you would divide that amount by this last amount which is the interest upon one dollar and the dollar added to it for the number of years he would be likely to live. That is, you would divide his annual earnings less his personal expenses, and what it cost to produce it, multiplied by the number of years he would probably have lived, by the sum of one dollar and the interest on the same for the number of years he would probably have lived, and the result would be the cash value of his life. I will let you take this paper out with you. Now tables have been introduced here which you can take out with you. You first find out, from the testimony that has been introduced, what the age of Mr. Christian was at the time of his death. The table shows then how long a person would probably live at a given age. You ascertain then, with the rules I have given you here on this piece of paper, how to make the calculation, provided you find the plaintiff is entitled to recover. And if she is entitled to recover, she would be entitled to have interest upon that amount

from the time of Mr. Christian's death. You would find the amount with interest upon it, calculated up to the present time, added to it, and bring in your verdict a certain given sum, not so much principal and so much interest, but as one round sum."

3. Defendant moved to rule out all the testimony showing the earnings of plaintiff's husband as a school-teacher, upon the ground that it appeared from the testimony that he had ceased to be a school-teacher for six or eight years before his death, was not engaged in that business at all, and therefore what he would earn in a business he was not pursuing and not engaged in at all, was not proper testimony for the consideration of the jury; which motion the court overruled. Defendant also moved to rule out all the testimony showing the earnings of Christian as a tax-collector, upon the grounds that the office of tax-collector was not an annuity but an office dependent upon the will of the people, and it could not be presumed that it would continue year after year to Christian. Defendant further moved to rule out all the testimony as to the earnings of Christian as postmaster, upon the grounds that the office of postmaster was not an annuity, but was held at the will of the President and might be revoked at any time, and the same was not the earnings of a man in contemplation of law. These motions also were overruled.

4. Plaintiff read a cross-interrogatory to E. M. Gray (who was at the time in question superintendent of defendant) as follows: "Don't you remember on the same day that Dixon killed Christian, and after you had given Mr. Tigner the order on Dixon for the engine and Tigner had started home, that you sent a negro requesting Mr. Tigner to drive by your camp; and don't you remember meeting Mr. Tigner as he drove by and telling him that the report was out that Dixon had killed

Christian, that Dixon had written or sent you word to that effect and wanted you to come to Chipley at once; and didn't you ask Tigner to take supper with you and carry you in his buggy to the springs; and didn't Mr. Tigner carry you to Mike DeLacy's hotel at the springs where you got a horse or conveyance on to Chipley that night; and didn't you, while at supper with Mr. Tigner or while riding with him in the buggy to the springs that night and talking of Dixon's killing Christian, say to Mr. Tigner that you were not surprised at it, for that you were uneasy or afraid all the time you were about Dixon, or words to that effect? Don't you remember making this statement, or one of similar import to Mr. Tigner at that time; and was not the statement true? Would you have made it if it had not expressed your feelings and been the truth?" And the answer to said interrogatory, as follows: "I remember the day that Mr. Christian was killed, and of asking Mr. Tigner to carry me to White Sulphur Springs where I could get a conveyance to carry me to Chipley. I remember to have remarked to Mr. Tigner while in his buggy, that it was no more than I expected. This remark was made because of what I knew to have been Mr. Christian's feeling toward Mr. Dixon, and from what I had heard his reputation to be for quarrelsomeness. I did not mean that I expected that Mr. Dixon would kill Mr. Christian or any other person, but that Mr. Christian would be killed by some one." Plaintiff also read another cross-interrogatory to Gray, as follows: "In view of Mr. Dixon's health and the nature of his disease, and in consequence of his variable temper and the ease with which he could be thrown off his balance and lose his mental equipoise, and his known ill feeling towards Christian, were you surprised when you heard he had killed Christian? Didn't you think at the time, and don't you think now, that it was just such a catastrophe

as might have been, under the circumstances just stated, reasonably expected ? And isn't it a fact that you were always, or frequently when in his presence, uneasy as to your own safety or the safety of others, or apprehensive of some difficulty or misunderstanding or serious trouble of some kind with him, or on his account, and did not the same cloud of apprehension and fear follow you and hover over you as to Dixon's conduct towards others when you were absent from him ? Mr. Gray, please ponder these questions; refresh your recollection as to your feelings and thoughts and fears on this subject, and state the real facts and truth of the matter. Have you done so? if not, why not?" And the answer of Gray to said interrogatory, as follows : "Yes, I was surprised and shocked to hear that Mr. Dixon had killed Mr. Christian. Knowing Dixon as I did, I did not expect that he would have killed Mr. Christian. I never had the slightest uneasiness as to my own safety or as to the safety of any other person, nor did I apprehend any difficulty, misunderstanding or serious trouble between him and the patrons of the road. The foregoing answers contain the real facts." Plaintiff then offered to read an interrogatory of B. F. Tigner, as follows : "You will please state, Mr. Tigner, where you were on or about the 9th day of September, 1884, when you first heard that Mr. James O. Christian had been killed by Mr. M. Dixon at Chipley ; and state who else was present when the announcement was made, and especially if any officer of the defendant company was present at that time, and if so, who he was ; and state what said officer said and how he acted when the announcement was made that Dixon had killed Christian, and state who it was that brought the news or made the announcement. Put the whole scene before us just as it occurred, the exact date, the time of day, who were present, the place, what was said, who said it, and the

effect it had or what exclamations it occasioned, and who gave utterance to them. State everything exactly and fully." To this interrogatory defendant had objected in writing, and plaintiff having offered to read the same and the answer in evidence, the court sustained the objection and refused to allow the same read. Plaintiff then offered to read the same after reading the interrogatories to Gray and his answers thereto, for the purpose of impeaching the testimony of Gray. Defendant objected upon the ground that no proper foundation had been laid for impeaching the witness, because in his answers he had not said that he did not say that he did not make all the statement, but said he remembered only a part of it and answered only to what he remembered; and because, if the witness Tigner should remember a few words more of the statement inquired about than Gray, that would not impeach Gray. The court overruled the objection and allowed the interrogatory and answer thereto to be read in evidence, not to show that the facts sought to be set up by Tigner's answers were true, but only for the purpose of impeaching Gray, which ruling is assigned as error.

5. Another ground is, that the court erred in refusing to charge as follows: "The plaintiff claims in her declaration that the defendant wrongly and negligently caused the death of her husband, by employing as its agent in controlling, possessing and using its depot and station-house in Chipley, one Stephen M. Dixon, who was unfitted for said position of agent by reason of prolonged disease, a confirmed dyspeptic afflicted with hypochondria and melancholy, irascible, peevish, petulant, passionate, and as a result of the aforesaid afflictions being a dangerous man, and that the defendant well knew the fact that said Dixon was so unfitted for the position of agent of said defendant railroad. If the jury do not believe from the evidence that the said

Dixon was, at the time of the killing of the plaintiff's husband, unfitted for said position of agent for the reasons alleged, then they must find for the defendant."

6. The refusal to charge as follows is assigned as error: "If you believe from the testimony that S. M. Dixon was the agent of the defendant, and that the plaintiff's husband, James O. Christian, by his conduct and abusive language towards Dixon provoked a personal quarrel between himself and Dixon, and that the killing of the plaintiff's husband, James O. Christian, was the result of the quarrel, and that he was killed by Dixon as an act of personal resentment, it would not be within the scope of his employment as a servant or agent, and the plaintiff would not be entitled to recover."

J. W. PARK and L. F. GARRARD, for plaintiff.

PEABODY, BRANNON & HATCHER and C. J. THORNTON, for defendant.