## 4148.  SHEPPARD *v.* JOHNSON.

In view of the provisions of the act approved August 13, 1910, regulating
    the use of automobiles, it is negligence per se to operate an automobile
    along one of the public highways of this State from one hour after
    sunset to one hour before sunrise without having displayed on the front
    of the machine at least one white light, throwing a light at least one
    hundred feet in the direction in which the machine is going.  The evi-
    dence in the present case authorized a finding that the defendant was
    negligent in failing to display upon his machine such a light as that
    described in the act of 1910; and that this omission of duty contributed
    to the plaintiff's injury.  The evidence also authorized a finding that
    the plaintiff could not, by the exercise of ordinary care, have avoided
    the consequences of the defendant's negligence after the same became
    apparent to her.  While the evidence preponderated in favor of the
    defendant upon the questions of negligence, there was some evidence
    to authorize a verdict in favor of the plaintiff, and no error of law
    having been committed, this court is without power to set aside the
    verdict.

DECIDED JULY 2, 1912.

Action for damages; from city court of Sandersville—Judge
Jordan.  March 12, 1912.

The suit was for damages claimed to have been sustained as a
consequence of an automobile, owned and driven by the defendant,
having run into a wagon owned by the plaintiff and being driven
on one of the public highways.  The collision occurred about
seven o'clock at night, at a point where the highway was intersected
by another public road.  The allegations of negligence are:  (1)
that the defendant did not have any light displayed on the front
of his automobile at the time of the collision; (2) that he was run-
ning at an unlawful rate of speed, to wit, fifteen miles per hour
or more; (3) that the defendant did not give any warning of his
approach by bell, horn, gong, or other signal; (4) that the de-
fendant was intoxicated, and was guilty of negligence in driving an
automobile in that condition.  Defendant answered, denying all of

the allegations of negligence and averring that he was in the exercise of all ordinary care and diligence, and that the collision between plaintiff's wagon and the automobile was unavoidable. Plaintiff recovered, and the case is here on exceptions to the judgment overruling the defendant's motion for a new trial.

*Evans & Evans,* for plaintiff in error.

*Gross & Swint,* contra.

POTTLE, J. (After stating the foregoing facts.)

The only question presented for decision is whether or not the verdict in the plaintiff's favor was supported by the evidence. There was no presumption of negligence against the defendant, and consequently the burden was on the plaintiff, not only to prove injury as alleged, but to prove that the defendant was guilty of some one or more acts of negligence set forth in the petition, and that such negligence was the proximate cause of the injury received by the plaintiff. By the act approved August 13, 1910, it is provided that from one hour after sunset to one hour before sunrise there shall be displayed on the front of every automobile and machine of like character, while being operated on or along any of the public highways of the State, at least one white light, throwing a bright light at least one hundred feet in the direction in which the machine is going, and also on the rear of each machine at least one red light, which shall effectually illuminate the number-tag on the rear. The act further provides, in section 5, that no person shall operate a machine on one of the highways of this State described in the act "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property, and upon approaching a bridge, dam, high embankment, sharp curve, descent, or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour." A further provision in the act is that on approaching pedestrians or persons operating other vehicles on the highway, the driver of the automobile "shall give reasonable warning of its approach by the use of a bell, horn, gong, or other signal, and use every reasonable precaution to insure the safety of such person or animal." Acts 1910, p. 92.

Under the provisions of this act it is negligence per se for one to

drive an automobile along one of the public highways of this State without displaying at least one white light, of the character described in the act, in front of the machine; it is also negligence per se to approach a public-road crossing at a speed greater than six miles per hour, or to approach any person on the highway without giving reasonable warning of the approach by the use of a bell, horn, gong, or other signal. If an automobile collide with a person on one of the public highways of this State in the nighttime, without having displayed in front of the machine such a light as is described in the act above cited, and injury result to him, he would be entitled to recover, unless he could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence after he became aware of its existence. While using a public highway at any point and at any time, whether in the daytime or nighttime, no greater speed can be used than is "reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property."

The maximum rate of speed that can be used by an automobile along the public highway is not fixed by the act at any point on the highway, except when approaching a bridge, dam, high embankment, sharp curve, descent, or crossing of intersecting highways, or railroad-crossing. The question as to what speed is reasonable and proper under the circumstances is a question for the jury in each case. There may be circumstances in which twenty-five or thirty miles an hour, or even a greater rate of speed would not be unreasonable or improper. On the other hand, circumstances may arise where ten miles an hour would be neither reasonable nor proper. The great object and purpose of the act of 1910 was to require the drivers of automobiles to so handle their motors as to protect pedestrians and other persons on the highway. The act recognizes that the driver of an automobile has an equal right to the public highway with any other person, but it is provided that this right shall be exercised only in the manner and upon the terms and conditions prescribed by that act. The public highways belong to the State. The State has a right to regulate the manner in which they shall be used, and when the General Assembly prescribes certain rules and regulations which must be observed by a particular class of persons who use the highways, if damage results

to another.using the highway, in consequence of a failure to ob-
serve such rules and regulations, a prima facie case of liability is
made out.   The General Assembly, in the. passage of the act of
1910, saw fit to prescribe definitely the maximum rate of speed
which could be attained when approaching a public crossing or a
railroad crossing on the public highway, and this rate of speed was
fixed at six miles per hour.   Courts are not concerned as to whether
this is the proper rate of speed to be fixed, but, under the terms
of this act, whenever it appears that the driver of an automobile
has approached a crossing along the public highway at a greater
rate of speed than six miles per hour, and a person on the highway
at or on the crossing is injured, he is entitled to recover for such
injury, unless it should appear either that the violation of this
portion of the act was not the proximate cause of the injury, or
that the person injured could have avoided the consequences of the
negligence in exceeding the rate of speed fixed by the act, after he
discovered such negligence.   A failure to give warning, upon ap-
proaching a person upon the highway, by the ringing of a bell,
horn, gong, or other signal is negligence per se, and if one going in
the same direction as the automobile shall be injured, a prima facie
case for recovery would be made upon proof of failure to give the
statutory warning, without reference to the rate of speed at which
the machine is being driven.

The question, therefore, is whether, in view of the provisions of
this act of the General Assembly, the plaintiff made out a case
which entitled her to recover.   In considering this question it must
be borne in mind that so far as this court is concerned, the jury
settles absolutely all disputed issues of fact.   If one witness testi-
fies to a single fact which supports the verdict, this court has
no power to interfere, unless an error of law has been committed,
even though a hundred witnesses testify to a contrary state of
facts.   The plaintiff testified, that she was driving along the public
highway at or very near a public-road crossing near the town of
Tennille, at a place where an electric light was shining brightly;
that she did not hear any signal from the automobile; that when
the machine struck the wagon it knocked the wagon round in the.
road and broke the wagon, and knocked down the mule hitched to
it, threw the plaintiff down in the wagon, and injured her in the
back and side and head, breaking the coupling-pole attached to the

wagon. When first on the stand the plaintiff testified that the lights on the automobile were burning, but when recalled at a later stage of the trial she testified as follows: "There was but one light on Mr. Sheppard's machine at the time of the accident, and it was so dim that it appeared to be several hundred yards from us when I first saw it, and actually ran into us before we knew it was any ways close to us. It ran into us almost simultaneously with my seeing it, and was actually into us before I realized how close they were on us." The defendant himself, while denying that he was running at an excessive rate of speed, and averring that his automobile had proper lights displayed in front of it, testified that when he saw the plaintiff he gave a signal of his approach, sounding the horn, and that when he saw the wagon he was running about six miles an hour. He further testified that his machine was in "intermediate" gear, and that in that gear it was impossible to run his car up the grade at that point on the highway at a greater speed than ten miles an hour. There was no evidence to support the allegation that the defendant was intoxicated. The act of intoxication would not be in and of itself such negligence as to authorize recovery. It might be pleaded and proved by way of inducement, for the purpose of illustrating the negligent conduct alleged against the defendant, but if one, even though intoxicated, should drive his machine in a proper manner and observe the rules and regulations prescribed by the act of 1910, an injury inflicted by his machine would not render him liable merely because he may have been under the influence of intoxicants at the time the injury occurred.

In the present case the preponderance of evidence was in favor of the defendant, and tended to disprove every allegation of negligence set forth in the petition, but without reference to other allegations of negligence, there was some evidence to support the averment that the defendant did not have displayed on his automobile such a light as is described in the act of 1910, and the jury were authorized to find that this omission contributed to the injury sustained by the plaintiff. An effort was made to impeach the plaintiff by evidence of contradictory statements previously made, but it was exclusively a question for the jury as to whether they would believe the plaintiff, notwithstanding she was thus contradicted, or would credit the testimony of the witnesses brought to

impeach her.   Where there is any evidence, or any legitimate in-
ference deducible from any evidence, which, under any theory of
law, will support a verdict returned by the jury, this court has no
power to interfere, unless some material error of law has been com-
mitted.   No such error having been committed in the present case,
it follows that the judgment overruling the motion for new trial
must be                                              *Affirmed*