40030. STANLEY, Administrator v. SQUADRITO, by Next Friend, et al.
40031. HUBBARD v. SQUADRITO, by Next Friend, et al.

Decided April 10, 1963.

Powell, Goldstein, Frazer & Murphy, Edward E. Dorsey, Eugene G. Partain, for Stanley.

Charles H. Hyatt, Sam F. Lowe, Jr., A. Paul Cadenhead, Thomas O. Davis, Lee Hutcheson, for Squadrito et al.

Sam F. Lowe, Jr., G. Robert Oliver, for Hubbard.

HALL, Judge. ■ The place and conditions surrounding the collision were described by witnesses. It was a two-lane highway; the surface was wet and slippery and uneven, or bumpy. Southwardly the highway descends and then for about a half mile ascends steeply to the crest of a hill; over the crest the highway makes an "S" curve, and slopes gradually upward. It is a dangerous curve. A driver traveling northwardly cannot see the traffic coming uphill until he gets within 200 feet of the crest of the hill. The trailer truck was going uphill southwardly at about 8 to 10 miles per hour. Its driver observed the automobile of Stanley, plaintiff's host driver, approximately 1,500 feet away coming around the curve from the opposite direction, traveling about 45 miles an hour; it was skidding and seemed to be out of control. Twice it went off the road to the right and back onto the road, and just after coming over the crest of the hill it crossed the highway and hit the truck.

Hubbard was also driving his ambulance southwardly up the hill. He was not on an emergency call. He testified at the trial that he was behind the trailer truck and had passed no traffic going up the hill. In evidence were written statements made by him the day after the collision, in which he said: Before the accident he passed his other ambulance, accompanied by police, going the other way. Then he turned on his blinking red light and, driving at about 55 miles per hour, passed some cars going down hill; and going up the hill where the accident occurred he passed some more cars, and about half way up the hill passed a slow moving truck. As he started to pull back in front of this truck and behind the trailer truck involved in the collision, which was about 100 feet ahead of him, he saw the Stanley car coming over the hill; he had plenty of room to pass the trailer truck.

The plaintiff testified that he was awakened by the screeching of tires, sat up on the back seat and saw a red light straight in

front of him, at about the middle of the windshield and 2 or 3 car lengths ahead of the car. He asked what was going on and then the collision occurred. He saw the trailer and the red light right beside it for only a second.

Though the evidence was not without conflict, that which we have mentioned above was sufficient to support the verdict, and the trial court did not err in overruling the general grounds of the motions for new trial and the motions for judgment notwithstanding the verdict of Stanley and Hubbard.

■ The plaintiff's amendment to which the defendant Hubbard demurred alleged that, as the ambulance, traveling southwardly, came up the hill and at the time of the collision, the red signal lamp on its roof was burning red for the purpose of signaling other vehicles to clear its path; that Hubbard knew or should have known that the operators of other vehicles upon seeing the red light burning would endeavor to clear the roadway; and that no emergency existed authorizing the burning of the lamp for this purpose. A statute, *Code Ann.* § 68-1604, excuses an ambulance in an emergency from observing certain traffic regulations, when this is consistent with due regard for the safety of others, and when the vehicle sounds a siren or other audible signal and displays a red light to other traffic. The law requires drivers of other vehicles to yield the roadway and stop for an approaching emergency vehicle to pass, when it is exhibiting a red light and sounding a siren or other audible signal. *Code Ann.* § 68-1654.

Whether the burning of the ambulance's red signal lamp as alleged in the amendment can be negligence is the question raised by Hubbard's demurrer. The answer depends upon whether Hubbard in the exercise of ordinary care could have foreseen in the circumstances that the burning of the lamp might create a danger to others. Restatement, Torts, 762, § 289. What is reasonably to be foreseen is generally a question for the jury. *Thomas v. Williams,* 105 Ga. App. 321, 327 (124 SE2d 409). An ambulance driver might reasonably foresee that the driver of another vehicle might respond to the red light signal by preparing to stop and clear the road even though no audible signal was being given. Given the facts of this case, including the

conditions of the weather, of the character and surface of the highway, and of the other highway traffic, we cannot say that it was not reasonably foreseeable that the unnecessary burning of the red light signal might endanger others and that it could not be negligent. Construing the amendment in connection with the other allegations of the petition, the trial court did not err in overruling Hubbard's demurrer to the amendment. For the same reasons the trial court did not err in overruling special ground 1 of Hubbard's motion for new trial complaining of the trial court's instruction to the jury on the specification of negligence alleged in the amendment.

■ Ground 3 of Hubbard's motion for new trial contends that the court erred in submitting to the jury the plaintiff's allegation of a violation of *Code Ann.* § 68-1626, and the law applicable thereto, because the evidence was not sufficient to support a finding of the alleged violation. *Code Ann.* § 68-1626 prohibits driving "at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing," and prohibits driving at over 60 miles per hour at any time. The violation alleged by the plaintiff was driving at 55 miles per hour under conditions and circumstances making such speed dangerous and unreasonable. Hubbard contends that there was no evidence that the ambulance was driven at 55 miles per hour when he was within Stanley's range of vision or at any time or place where this rate of speed could have had anything to do with the collision. We will assume, though we do not decide, that the defendant's speed was less than 55 miles per hour when the forces that brought about the collision became active. The gist of the violation of the statute is not driving at 55 miles per hour; it is driving at a speed greater than is reasonable and prudent under all the circumstances. In other words, the speed of 55 miles is not material; the material issue is whether the defendant's speed, whatever it was, was dangerous under all the circumstances. To find such a violation of *Code Ann.* § 68-1626 to be negligence per se, a finding of common-law negligence must first be made. *Grayson v. Yarborough*, 103 Ga. App. 243, 247 (119 SE2d 41). Failure to prove Hubbard's speed was 55 miles would not elim-

inate this allegation of negligence. *Christian v. Columbus &c. R. Co.*, 90 Ga. 124, 125 (15 SE 701); *Orr v. Dawson Telephone Co.*, 35 Ga. App. 560 (133 SE 924); *City of Atlanta v. Hawkins*, 45 Ga. App. 847 (166 SE 262); 41 Am. Jur., p. 548, § 371; p. 549, § 372; p. 553, § 379; p. 578, § 411. When the reasonableness of speed is in question—rather than the commission of an exact offense—the determination is necessarily for the jury. *Sheppard v. Johnson*, 11 Ga. App. 280, 281 (75 SE 348); *Central of Ga. R. Co. v. Larsen*, 19 Ga. App. 413, 420 (91 SE 517).

■ In ground 2 Hubbard contends that the evidence did not authorize the portion of the court's charge quoting the plaintiff's allegations of violations of *Code Ann.* §§ 68-1637, 68-1638, and 68-1626 (the allegation discussed in Division 3 above), and instructing that if the jury should find any of these violations in fact occurred it would constitute negligence. We have held in Division 3 that the instructions complained of in Hubbard's ground 3, which are but a part of the instructions complained of in ground 2, were authorized. The assignment of error on instructions as a whole, a part of which are authorized, is without merit. *Chandler v. Mutual Life Assn.*, 131 Ga. 82, 87 (61 SE 1036); *Huckaby v. State*, 23 Ga. App. 812 (99 SE 633); *Rentz v. Hagan*, 31 Ga. App. 729 (122 SE 247); *Louisville &c. R. Co. v. Bean*, 49 Ga. App. 4, 7 (174 SE 209); *Hunt v. Williams*, 104 Ga. App. 442, 446 (122 SE2d 149).

■ We disagree that there was no evidence authorizing the portion of the charge, complained of in Hubbard's ground 4, in which the court stated allegations in plaintiff's petition of negligence per se in violation of *Code Ann.* §§ 68-1638 and 68-1637. *Camp v. Phillips*, 42 Ga. 289, 290; *Harper v. Hall*, 76 Ga. App. 441, 446 (46 SE2d 201). However, it is not error to state to the jury the contentions of the parties or read to them the pleadings, even though some of the contentions or issues raised by the pleadings be not supported by proof, where it does not appear that the jury could have been misled thereby. *Moffett v. McCurry*, 84 Ga. App. 853, 858 (67 SE2d 807). Since ground 4 assigns error only on the court's submitting to the jury these specific allegations from the petition, it is without merit.

■ Ground 5 of Hubbard's motion for new trial assigns error because the court inadvertently used a wrong word in its charge to the effect that a party's testimony that is self-contradictory, vague, or equivocal "is to be construed most strongly against him" and he is not entitled to a verdict "if that version of his testimony the *most* favorable to him, shows that the verdict should be against him." (Emphasis supplied). Hubbard's argument is that this charge, as applied to the plaintiff's testimony, was prejudicial to Hubbard, because the inference to be drawn from the testimony, when construed most strongly against the plaintiff, is that the Hubbard ambulance was not on the wrong side of the road. "While it is true that where a party to a case is the only witness who testifies to the material facts in his case, and where his testimony is susceptible of two constructions, the one least favorable to his interest should be adopted . . . this principle is applicable only where the testimony of the party is clearly conflicting, and is unsupported by other evidence. . ." *Williams v. Fouche,* 164 Ga. 311 (138 SE 580). Accepting the least favorable of the *inferences* that can be drawn from testimony is a different thing from considering one or another *version* of contradictory, vague, or equivocal testimony. The plaintiff's testimony, summarized in Division 1, was not of the character described in the instruction complained of. Hence, though the court inadvertently said "most favorable" when it meant "least favorable," the charge was not error for the reason assigned, and it is not likely that it adversely affected Hubbard. In fact, had the jury applied the charge literally to Hubbard's testimony and prior statement it might have helped him.

■ Hubbard's ground 6 does not show that the reference in the court's charge to impeachment of a witness for general bad character caused harm requiring a new trial, even though there was no evidence respecting bad character of any party or witness. An error in charging on the subject of character, when no evidence of character has been introduced, is generally not sufficient reason for the reversal of a judgment. *Southern R. Co. v. O'Bryan,* 119 Ga. 147, 151 (45 SE 1000); *American Fidelity &c. Co. v. McWilliams,* 55 Ga. App. 658, 662 (191 SE 191);

■

*Scarboro v. State,* 24 Ga. App. 27, 28 (99 SE 637). "Especially is a new trial not demanded [on this ground] . . . when the instructions upon the subject of the credibility of the witnesses generally and of the right of the jury to determine for themselves in whose favor is the preponderance of the evidence, are clear, pertinent, legal and impartial." *Farkas v. Brown,* 4 Ga. App. 130 (60 SE 1014).

■ Stanley's motion for new trial, in grounds 4, 5, 6, 7, 9 and 10, complains that the court failed to give in conjunction with several portions of the charge instructions to the effect that the three defendants did not owe the same degree of care to the plaintiff and elaborating on the difference between the degree of care owed by Stanley and that owed by the other defendants. Stanley argues that the omission of the instructions set out in her motion, which occupy more than a full page in each of these grounds, misled the jury into believing the same standard of care applied to all the defendants and allowed the jury to find Stanley liable for negligence less than gross negligence. In its instructions on negligence the court charged that the only negligence for which the plaintiff could recover against the defendant Stanley would be gross negligence, and then charged that "slight diligence is that degree of care which every man of common sense howsoever inattentive he may be, exercises under the same or similar circumstances and the absence of such care is termed gross negligence." The court charged, "The plaintiff alleges that [the defendant Stanley] was guilty of gross negligence in the following particulars: . . ." Then the court stated each act and omission alleged as common-law negligence and instructed that if the jury "should find that the facts as alleged . . . in any of the allegations read, then the jury would determine" the question of gross negligence, or the failure to exercise slight care. Then the court stated and gave instructions on the plaintiff's allegations of negligence per se. The court similarly charged the allegations of negligence against the other defendants and defined reasonable care and ordinary negligence. We should not assume that the jury paid no attention to some portions of the charge; but on the contrary the presumption is that the jury pays attention to and correctly

applies all of the charge. Leverett, Hall, Christopher, Georgia Pleading & Practice 395, § 18-3. In this case the trial court instructed the jury that the charge was to be considered as one entire body of law. "When error is assigned upon the failure of the court to charge a required principle of law at a particular place in the charge, or in connection with a specified part thereof, the whole charge must be looked to in order to determine whether or not the alleged omitted part is error; and construing the charge as a whole, if the required part alleged to be omitted at a particular place is elsewhere contained in it, the charge is without error on this ground." *Harper v. Hall,* 76 Ga. App. 441, 446, supra; *Marcus v. State,* 76 Ga. App. 581 (46 SE2d 770) ; *Morrow v. Johnston,* 85 Ga. App. 261, 264 (68 SE2d 906). It is improbable from the charge as a whole that the jury would have had the misconception contended by Stanley in these grounds.

■ The question raised by ground 8 of Stanley's motion for new trial is whether the court's charge left the impression with the jury that, if they found Stanley had committed negligence per se in violating any statutory traffic regulation as alleged by the plaintiff such violation would of itself be gross negligence. Stanley contends that to avoid confusing the jury the court should have charged in conjunction with the charges on negligence per se that a violation of any of the statutory provisions would not necessarily constitute gross negligence, and that whether or not such violation constituted gross negligence was a question for the jury. We agree that, if the instruction that the jury examine the facts and determine the question of gross negligence had followed rather than preceded the reading of the allegations of negligence per se (see Division 8 for an outline of the charge), it would have been more clearly emphatic that the instructions applied to the negligence per se as well as to the common-law negligence alleged. However, we need not assume that the placing of a portion of this charge in one place rather than the most desirable place in the arrangement of instructions on negligence would cause the jury to forget and ignore the positive charges that the only negligence for which the plaintiff could recover of the defendant Stanley was gross

negligence, and defining what the law recognizes as gross negligence, or the charge that "All questions of negligence . . . are for the jury alone to determine under the evidence and under the instructions of the court." The charge as a whole covers the proposition that negligence per se does not necessarily constitute gross negligence.

When a party considers that the distinction between legal standards is a critical issue and that the form and arrangement of the instructions on the issue is important, it may be wise for him to submit a request for a specific charge in the form most desirable to his position. When he submits no request, he is not entitled to a new trial unless he shows that the charge organized by the court, which covers the subject and is not incorrect or contradictory in any particular, causes harm beyond the possibility that the jury might have failed to relate some portion to another as it should. See *Wilson v. Harrell*, 87 Ga. App. 793, 806 (75 SE2d 436). We must recognize that this possibility exists in any charge, though it may approach perfection, and though both court and counsel should and do try to minimize it.

The trial court did not err in overruling Hubbard's demurrer to plaintiff's amendment, or in overruling Hubbard's and Stanley's motions for new trial and for judgment notwithstanding the verdict.

*Judgment affirmed. Carlisle, P. J., and Bell, J., concur.*