COMER *et al.*, receivers, *v.* BARFIELD.

1. Though a traveler upon a public highway, in approaching a railroad-crossing, may not observe that amount of care and diligence which would be exercised under like circumstances by an ordinarily prudent person, he is not necessarily precluded from recovering for injuries to his person or property, received on the crossing, if, after it is apparent that the engineer of the company is disobeying the provisions of section 2222 of the Civil Code, he then exercises ordinary care and diligence in endeavoring to escape the consequences of the company's negligence.

2. The charge complained of in the present case was substantially in accord with the law as above announced, and the evidence warranted the verdict.

Argued June 28, — Decided August 5, 1897.

Action for damages.  Before Judge Beck.  Spalding superior court.  October 16, 1896.

Barfield sued the receivers of the railroad company for the demolition of a buggy by the running of a freight-train, and obtained a verdict.  Defendants moved for a new trial, which was

| | |
|---|---|
| 102 | 485 |
| f112 | 866 |
| 102 | 485 |
| 113 | 710 |
| 113 | 711 |
| 102 | 485 |
| 116 | 425 |
| 102 | 485 |
| 119 | 297 |
| 102 | 485 |
| 129 | 110 |

denied, and they excepted. The injury happened at or near midnight, upon what was known as Jones crossing, a public crossing near Griffin. The train had from thirty to thirty-five cars, and was running down grade at the rate of twenty to twenty-five miles an hour, schedule time. Patterson, to whom plaintiff had lent the buggy, was found lying by the railroad at the crossing, presumably killed by the collision, his head being crushed. The fragments of the buggy were at the same place. A witness for the plaintiff testified that she lived near Gray's crossing in the same county, and was awake when this train passed about twelve o'clock. She did not hear the whistle blow at the blow-post, but heard it blow at the crossing; if it had blown she would have heard it. From other testimony it appeared, that the engineer of the train did not continue to blow the whistle and check the train from the time he blew at the whistle-post until he came to the crossing; that there are woods on each side of the railroad in approaching it at the Jones crossing; that one could see up the railroad for nearly a quarter of a mile, or could see the headlight of the engine that far, when within twenty to forty yards of the crossing; that the public road curves somewhat in approaching the railroad, etc. The testimony of the company's servants is to the effect, that the engineer was looking ahead, and did not see the buggy until it was on the crossing, thirty or forty yards ahead of the engine, when it was too late to stop the train in time to avoid the collision, but the danger-signal was blown, brakes were applied, and everything was done that could be done to prevent the train from striking the buggy; that a crossing-signal had previously been blown; that the headlight was burning, and the night was moonlit; and that one could stand from twenty to thirty yards from the railroad in the public road and see an approaching train between a quarter and a half mile distant. The motion for new trial alleges, in addition to the general grounds, that the court erred in charging the jury as shown in the opinion.

*Hall & Boynton*, for plaintiffs in error.
*Hammond & Cleveland* and *T. E. Patterson*, contra.

FISH, J.  1. It is provided by section 2322 of the Civil Code that: "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him." Section 3830 declares that: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. But in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." Construing these two sections in pari materia, this court, in *Americus Railroad Co.* v. *Luckie*, 87 *Ga.* 6, speaking through Mr. Justice Lumpkin, said: "It seems to be the clear meaning of our law that the plaintiff can never recover in an action for personal injuries, no matter what the negligence of the defendant may be, short of actual wantonness, when the proof shows that he could by ordinary care, after the negligence of the defendant began, or was existing, have avoided the consequences to himself of that negligence. The law also clearly contemplates cases in which, while the plaintiff is to some extent negligent, he nevertheless could not, by using ordinary care, have avoided an injury resulting from defendant's negligence. Of course, there can be no recovery when the defendant is entirely free from negligence and uses all proper care to prevent injury. The law of contributory negligence is applicable only where both parties are at fault, and when, also, the plaintiff could not by ordinary care have avoided the injury which defendant's negligence produced." The rule thus evolved was approved and followed in the later case of *Brunswick & Western Railroad Co.* v. *Gibson*, 97 *Ga.* 489. Its application to a case wherein it appears that a traveler upon a public highway was injured at a railway-crossing, under circumstances suggesting a doubt whether his own contributory negligence in failing to take the necessary precautions to ensure his safety is to be regarded as the proximate or efficient cause of his injury, must, of course, depend largely

upon the character and degree of the negligence with which the railway company is charged. In this connection, it is important to note the duty, relatively to a traveler on a public highway, which devolves upon the company of observing extra precautions in order to avoid casualties at grade crossings. Section 2222 of our Civil Code provides for the erection of "blow-posts" by the company upon its right of way, at a disance of four hundred yards from, and on either side of, every public road crossing, and declares that the company's "engineer shall be required, whenever he shall arrive at either of said posts, to blow the whistle of the locomotive until it arrives at the public road, and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road." It will therefore be seen that if the requirements of this section are strictly observed, a collision at a public road crossing can seldom, if ever, occur; and it follows that the danger of driving a vehicle upon and over such a crossing, without first observing the ancient rule that a traveler, before so doing, must "stop, look and listen," is not one so patent as to warrant the conclusion that it is negligence per se to endeavor to cross without taking such precautions. At any rate, our General Assembly has seen fit to prescribe that the traveler shall be given ample warning of the approach of a train by a continuous blowing of the whistle of the locomotive from the time it reaches the "blow-post" until it arrives at the crossing; and in the event the company fails to discharge its duty in this respect, it does not lie in its mouth to say that the traveler voluntarily and through his own negligence alone placed himself in a situation of peril by driving on the crossing without taking steps to ascertain whether or not a train was approaching. The circumstances under which he did so may, perhaps, have been such as to negative the assumption that a person of ordinary prudence would have done likewise; still his exposure to danger would be traceable, not alone to his own heedlessness, but to the culpable omission on the part of the company's servants to give him in time the warning to which he was entitled under our statute. If the company's negligence ends

here, and the traveler sustains injury by reason of being thrown from his vehicle because unable to control his horse, doubtless the company might reply to any claim upon it for damages that he himself was not without fault, and might by the exercise of ordinary care "have avoided the consequences to himself caused by" its negligence. See Civil Code, § 3830, above quoted. But this defense could not be urged if the company, after omitting to warn the traveler of the impending danger, follows up its negligence in this regard by a total failure to observe the additional duty imposed upon it by statute of having its train under perfect control, and itself inflicts the injuries by negligently running him down with its locomotive. This would be the immediate and efficient cause of the injury inflicted upon him; and if, as soon as his peril was apparent, he used all diligence to avert the catastrophe, it could not be said that by ordinary care he might have escaped the consequences to himself of this particular and most aggressive act of negligence on the part of the company. Therefore he would not be entirely precluded from recovering damages; although, being chargeable with contributory negligence, because acting in concert with the company in bringing about the situation of peril to himself, he could not in good conscience, or (as is more to the point) under section 2322 of the Civil Code, recover damages undiminished "in proportion to the amount of default attributable to him."

2. It appeared in the case at bar, that the vehicle for injury to which the plaintiff claimed damages had been loaned to one Patterson, who was in charge thereof and was driving the animal attached thereto on the night the casualty occurred. The presiding judge, as was unquestionably proper, tried the case upon the theory that the plaintiff's right to a recovery necessarily depended upon the inquiry whether, under the circumstances brought to light, Patterson himself, had he been injured rather than killed outright in the collision, could have recovered damages against the defendants. In this connection, his honor charged the jury: "If Patterson had been intrusted with Barfield's buggy and was driving it, and drove it upon the railroad-track, and the buggy at the crossing was struck

and injured by defendants' locomotive, and both Patterson and defendants' agents were at fault, and the circumstances were such that after defendants' negligence (if there was such negligence) became operative as to Patterson and plaintiff's property, Patterson could not have avoided the consequences of defendants' negligence by the exercise of ordinary care, then plaintiff is entitled to recover damages, but the damages should be diminished by the amount of default attributable to him." As we understand the facts of the case, this charge was not only substantially correct as an abstract proposition of law, but was relevant and well adapted to one of the main issues in controversy. A very similar charge was approved in *Gibson's* case, supra, which was an action for the homicide of the plaintiff's son, who was killed while endeavoring to cross the defendant's railroad at or near a public crossing.

It clearly appears from the record now before us that the defendants were culpably negligent. Even though an ordinarily prudent person might not, under the circumstances, have failed to observe the approach of the train, still it was not, as matter of law, incumbent upon Patterson to anticipate that the defendants' servants in charge of the train would disregard and violate a criminal statute to the protection incident to an observance of which he was entitled. So we are not prepared to say that the trial judge erred in giving the above quoted charge, or that the jury were not warranted in reaching the conclusions indicated by their verdict.

*Judgment affirmed. All the Justices concurring.*