## WILLIAMS *v.* SOUTHERN RAILWAY COMPANY.

The evidence was of such a character as to require the submission to the jury of the issues raised therein, and it was error to grant a nonsuit.

Submitted July 18,—Decided November 12, 1906.

Action for damages. Before Judge Kimsey. Habersham superior court. September 7, 1905.

*Arnold & Arnold, Harvey Hill,* and *J. C. Edwards,* for plaintiff. *John J. Strickland,* for defendant.

ATKINSON, J. When it was shown by the evidence that the deceased came to his death by the running of the locomotive, cars, and other machinery by the agents and servants of the defendant engaged in the operation thereof, the statutory presumption specified in the Civil Code, § 2321, arose. Under the provisions of the statute just referred to, the liability of the railroad company, when once established by presumption, will remain, "unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence." Under no view of the evidence could it be said that the defendant has shown its agents to have been in the exercise of all ordinary and reasonable care and diligence at the time of the commission of the homicide. They were running through a town and over a public crossing where they had reason to anticipate the presence of persons. The deceased was where he had a right to be,—in the street. The ground was

mutual. The probability is that the whistle was blown only at the mile limit, because that was the usual place for the engine to give the station signal, and it was running at the rate of 40 or 45 miles an hour, and the night operator, who was the agent for the defendant, testified that it was about a minute and half from the time it blew until the train passed the depot. Without blowing another time, the servants of the defendant in charge of this train ran at this terrific rate of speed around a curve within about 300 yards from the depot and over the crossing where the deceased was struck, and not even the agent of the defendant seems to have heard the bell ring. Running at that high rate of speed, it would have been hardly possible for persons crossing the railroad track on the public crossing, in vehicles or otherwise, to escape injury from the train. The conditions were such that those operating the train did not even know they had struck the deceased, until after the news had been telegraphed ahead by the night operator, although they were bound to anticipate his presence there. It is impossible to see how this could have happened if the servants of the defendant had been in the exercise of ordinary and reasonable care. The judgment of nonsuit could not have been awarded upon the theory that there was no negligence upon the part of the defendant

It is insisted, however, that the plaintiff's husband, by the exercise of ordinary care and diligence upon his own part, could have avoided the consequences of the defendant's negligence, and for that reason the plaintiff could not recover. The burden of proof rests upon the defendant to establish this defense. Civil Code § 5160; *Falkner* v. *Behr*, 75 *Ga.* 671; *City Council of Augusta* v. *Hudson*, 88 *Ga.* 599 (3); *Georgia Midland R. Co.* v. *Evans*, 87 *Ga.* 675. This, of course, may be accomplished by the plaintiff's evidence, if it so authorizes. But the rule applies only after the defendant's negligence begins and its existence becomes apparent. *Brunswick R. Co.* v. *Gibson*, 97 *Ga.* 497; *Western & Atlantic R. Co.* v. *Ferguson*, 113 *Ga.* 708; *Atlanta, K. & N. Ry. Co.* v. *Gardner*, 122 *Ga.* 82 (4). If, after the negligence of the defendant commenced, the deceased became aware thereof, or by the exercise of ordinary care should have become aware thereof, and then and thereafter failed to exercise ordinary and reasonable care and diligence for his own safety, there could be no recovery. The deceased's want of ordinary care is a question for the jury, concerning which they are exclu-

sive judges, just as they are concerning the negligence of the defendant. It was for the jury to say, under the particular circumstances of this case, at what time the negligence of the defendant began. When did the deceased know of it? Or when did its existence become apparent so that, under the particular attendant conditions, the deceased, by the exercise of ordinary care, should have known of its existence? The negligence could not be said to have commenced until after the train reached the blow-post four hundred yards from the crossing, and the engineer failed to begin slackening the speed. We are left to surmise as to when, if ever, its existence became known to the deceased, for he was never heard to say. Then we may ask, when did the negligence become so apparent that one standing where deceased was should by the exercise of ordinary care have known of its existence? This could only be answered by the jury. Under the blow-post law, the engineer was bound to ring the bell at a point 400 yards before reaching the crossing and to continue to slacken the speed of the train so as to avoid injury to persons on the crossing. Between the blow-post and the crossing was a cut and a curve through which and around which the train ran. In coming through the cut, the headlight commenced to flash upon the houses, and did not straighten down the track until the curve was rounded. This point was about 700 feet from the crossing. Up to the time of rounding the curve, it could hardly be said that it was apparent to any reasonable person that the engineer did not intend to obey the blow-post law by slackening the speed and keeping the engine under such control as to avoid injury to any one upon the crossing. At what time after rounding the curve it should have become apparent to one at or near the crossing that the engineer was violating the blow-post law, it is difficult to ascertain. There was evidence to the effect that it was the custom of the train ordinarily not to stop at Mount Airy; but the custom not to stop does not mean a custom not to observe the blow-post law. Two of the witnesses for the plaintiff testified that in their opinion the deceased was obliged to know that the train was not going to stop; but that is a very different matter from testifying that it was apparent to the deceased that the blow-post law would be disregarded by the engineer. After the train had rounded the curve and had been seen by the deceased, it may not even then have been apparent that the engineer was violating the

law. Before a nonsuit would have been authorized, it would be necessary for the evidence to have affirmatively shown that the negligence of the defendant was apparent, and that after it became apparent, the deceased was so wanting in ordinary care and diligence for his own safety as to permit his own negligence to become the proximate cause of the injury. The time at which the defendant's negligence became apparent was entirely too indefinite to enable the court to hold, as a matter of law, that after it did become apparent the deceased failed to exercise ordinary care and diligence for his own safety. The rule of diligence and the precaution necessary to be taken by the deceased in such a case is applied by Mr. Justice Cobb, in the case of *Western & Atlantic Railroad Co.* v. *Ferguson,* supra. If it is to be said that before going on the track, it was the duty of the deceased to look for the approach of a train, that would not affect the case, because it does not affirmatively appear that he did not look; and, as already discussed, if he had looked and had really seen the train, the evidence is too uncertain, as to when the negligence of the defendant became apparent, to show that he could then by the exercise of ordinary care have avoided the injury to himself. Again, there were several railroad tracks side by side which lay in his way, and which the defendant intended to cross. When he was first seen by the witnesses and when the glare from the electric headlight first appeared upon the crossing he was already upon one of the railroad tracks, proceeding to cross. It may be that as soon as the train rounded the curve he did see it, but such might not necessarily make it incumbent upon him to retrace his steps or stand still. He was already in a place of danger, and it may be that diligence would have directed that he move on. He may have been more or less confused by the number of tracks and the dazzling brilliancy of the light, and he may have been more or less negligent in his movements about going on the track; but his negligence under those conditions might go to diminish the amount of the recovery, rather than to defeat the cause of action altogether. We are of the opinion that upon the theory of a want of ordinary care upon the part of the injured person the evidence does not authorize a nonsuit; and the judgment of the court, being unauthorized upon either of the two theories upon which it is predicated, should be reversed.

*Judgment reversed. All the Justices concur.*