### LOUISVILLE & NASHVILLE RAILROAD CO. *v.* STAFFORD.

1. In an action against a railroad company for damages from injuries to an automobile and to the person who was operating it, where it appeared that the injury occurred on a public crossing, and that at the time of the injury the plaintiff was driving his car in violation of the statute in regard to running automobiles over railroad crossings, and that the defendant was violating the statute and a city ordinance in regard to running trains over public crossings within the city, it was not erroneous to refuse to charge the jury, upon request: "If you find from the evidence in this case that the plaintiff did not have his automobile under control, or was operating it at a rate of speed greater than six miles per hour, at the time he approached the railroad crossing, then I charge you that in either event he would not be in the exercise of ordinary care for his safety, and would not be entitled to recover in this case, and your verdict would be for the defendant."
2. The evidence was sufficient to authorize the verdict for the plaintiff.

NOVEMBER 18, 1916.

Action for damages. Before Judge Patterson. Cherokee superior court. September 25, 1915.

Stafford brought suit against the Louisville and Nashville Rail-

road Company, for damages on account of injuries to his person and to his automobile, caused by a collision at a public street crossing in Canton, Georgia. The petition alleged that the crossing was at street grade in a very populous section of that city, and was used constantly by pedestrians as well as drivers of vehicles. On the morning of the 11th of May, 1914, as the plaintiff was just upon and attempting to go over this crossing, the defendant's passenger-train, without warning or notice, struck his automobile, causing the injuries. He alleged, the train was then running at the rate of thirty to forty miles per hour, in violation of the laws of Georgia, and the ordinances of the City of Canton; that it was the duty of the defendant to have its train under control, and not to run at a greater rate of speed than five miles per hour, and that its servants should have warned the plaintiff of the approach of the train, by tolling of bell or by other means, and that they were negligent in failing to do either. On the trial the plaintiff testified, among other things, as follows: "As I approached the crossing, I was running the machine from eight to ten miles per hour. I didn't have any notice or warning of the approach of any train, and there wasn't any ringing of the bell, or sounding of a gong given as the train approached the crossing, and as I approached it. In approaching the crossing coming back into Canton, there are houses and trees built up there near the track, and it cuts the view off from seeing the train until you get in from fifteen to eighteen feet of the track. . . I was in fifteen to eighteen feet of the track when I first saw the train, and when I saw it I put on my brakes and turned my car to the right, to keep from going between the rails. I thought by turning to the right, I would turn sideways to the track while I was stopping, and possibly he would miss me, in turning while I was stopping. When I saw the train it was making from twenty-five to thirty miles per hour, and he was giving no signal in the ringing of the bell after I came in sight of the train. I put my brakes on and stopped the car in an effort to keep the train from hitting me and the automobile. My brakes and car were in good working order. I turned the car to the right. I could not have gone on across and kept it from hitting me, because I would have been just between the rails. . . When I saw the train, I was in fifteen to eighteen feet of the track, going between eight and ten miles.

The train was making between twenty-five and thirty miles. . . There is a slight grade up on the railroad crossing—going to the crossing. . . On a slightly up-grade such as that was there I could stop the car on a rise in twenty-five or thirty feet. No, I would not have to run twenty-five or thirty feet at a ten-mile speed to stop the car. I could stop in fifteen feet. I don't think I could stop it in ten feet. I could stop in five or six feet, running five miles per hour. Running six miles per hour on the same grade, I suppose it would be about the same. . . I was running about ten or twelve miles that morning. Eight or ten miles was what I was running. I don't think I was running over ten miles at the outside. Ten miles per hour is a slow speed for a Ford. . . When I got in a distance of from fifteen to eighteen feet of the track, I saw this train coming. The train was about fifty feet away at that time. The engine was in some fifty feet of me when I first saw it. After I slammed on the brakes and stopped the car, and made the turn, the engine was some twelve or fifteen feet to my position. . . I heard some ladies hollering before I got up to where I saw this train. I didn't know that they were calling my attention to the fact that the train was approaching."

The jury returned a verdict for the plaintiff. The defendant made a motion for new trial, and excepted to a judgment overruling the motion. Other facts sufficiently appear in the opinion.

*E. W. Coleman* and *D. W. Blair,* for plaintiff in error.

*Howell Brooke, N. A. Morris,* and *G. D. Anderson,* contra.

ATKINSON, J. 1. Error is assigned on a refusal to charge the jury thus: "If you find from the evidence in this case that the plaintiff did not have his automobile under control, or was operating it at a rate of speed greater than six miles per hour, at the time he approached the railroad crossing, then I charge you that in either event he would not be in the exercise of ordinary care for his safety, and would not be entitled to recover in this case, and your verdict would be for the defendant." A person can not recover damages from a railroad company for injury done to himself or his property: (*a*) when the injury is done by his consent or is caused by his own negligence (Civil Code, § 2781); (*b*) where after the negligence of the railroad company commenced and was apparent, or the circumstances were such that an ordinarily pru-

dent person would have reason to apprehend its existence, the plaintiff by the exercise of ordinary care could have avoided the consequences to himself of the defendant's negligence. Civil Code, § 4426; *W. & A. R. Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802); *Williams* v. *Southern Ry. Co.,* 126 *Ga.* 710 (55 S. E. 948). Except as just indicated, the plaintiff can recover for injury done by the negligence of the railroad company, notwithstanding his own negligence, in some degree less than that of the defendant, may have contributed to cause the injury; in which case the plaintiff's negligence goes merely in reduction of damages. Civil Code, §§ 2781, 4426; *Americus &c. R. Co.* v. *Luckie,* 87 *Ga.* 6 (13 S. E. 105). The request to charge does not properly apply these principles to the facts of the case. The railroad company might be negligent per se in violating the city ordinance and the statute in regard to running trains over public crossings, and the plaintiff might be negligent per se in violating the statute in regard to running automobiles while approaching and crossing railroad-tracks, but it would not necessarily follow that the negligence of the plaintiff would be the proximate cause of the injury, or that it would be as great as that of the defendant, or that the plaintiff by the exercise of ordinary care could have avoided the consequence of the defendant's negligence after it commenced or became apparent, or the circumstances would have afforded reason to apprehend its existence. The question of negligence and the degree of negligence of the respective parties would be for the jury under the particular facts. The railroad company could be guilty of negligence per se, under the city ordinance, in failing to toll the bell and in running its train over the crossing at a speed slightly over five miles per hour; but the jury could say that it would be guilty of a greater degree of negligence by failing to toll the bell, and in running the train over the crossing at twenty-five or thirty miles per hour. And the plaintiff would be guilty of negligence per se in approaching the crossing at a greater rate of speed than the statute prescribed, but the degree of his negligence would in all cases depend on the circumstances. If there was no train in the vicinity, no danger from disobeying the statute would exist. If not otherwise negligent, his negligence would consist in disobeying the statute. As the circumstances might enhance the danger his negligence would increase; but whether it should bar a

recovery under the circumstances must be left to the jury. So also the time when the negligence of the defendant came into existence and was apparent or should have been apprehended, and whether after it became so the plaintiff by the exercise of ordinary care could have avoided the consequences thereof to himself, were questions for the jury. The evidence reported in the statement of facts, concerning the circumstances in which the injury was committed, was not sufficient, under the application of the foregoing principles, to take the case from the jury. As the requested charge, if given, would have invaded the province of the jury, it was properly refused.

2. The evidence was sufficient to support the verdict.

*Judgment affirmed. All the Justices concur, except Fish, C. J., and Beck, J., dissenting.*

BECK, J., dissenting. The plaintiff was violating a criminal statute at the time of the injury received by him, and his violation of the statute was the efficient cause of the injury. The greater weight of authority is against his right to recover under this state of facts, although the defendant may have been guilty of violating the statute in reference to crossings.

FISH, C. J., concurs in the dissent.