8222.  CENTRAL OF GEORGIA RAILWAY CO. *v.* LARSEN.

The verdict approved by the trial judge was not without evidence to support it; there was no error in overruling the general demurrer, and the charge of the court correctly stated the rules of law applicable to the issues involved.

DECIDED FEBRUARY 16, 1917.

Action for damages; from Johnson· superior court—Judge Graham.  December 15, 1915.

*Saffold & Jordan,* for plaintiff in error.

*Hines & Jordan, B. H. Moye, W. W. Larsen,* contra.

JENKINS, J.  Mrs. Rebie Parker Larsen brought suit against the Central of Georgia Railway Company, under sections 4424 and 4425 of the Civil Code of 1910, for the homicide of her husband, W. T. Larsen, who was killed by a collision with a passenger-train of the defendant at a public crossing while driving an automobile. The plaintiff alleged, in her petition, that the defendant failed to observe, any of the requirements of section 2675 of the Civil Code, known as the "blow-post law," but that the engineer in charge of the train at the time of the collision, ran it over the said crossing at a high and reckless rate of speed, to wit, at the rate of forty miles per hour; that the servants in charge of the train did not blow the whistle or give any other signal of its approach to the crossing, from the time the blow-post was reached until the crossing was passed; and that the engineer in charge of the train did not, on arriving at the blow-post, check and continue to check its speed as required by law, so as to be able to prevent such a collision.  The petition alleged that the plaintiff's deceased husband was twenty-seven years of age at the time of his death, and was at that time earning $300 per month in the practice of law, and alleged the full value of his life to be $39,725.  The petition further alleged as follows:  At the time of his death said W. T. Larsen was traveling in an automobile, going from Dublin, via Scott, Georgia, to Swainsboro, Georgia, and had to cross the railway of

said company at the point where said public road, known as the National Highway, crosses the railway of said company after leaving Scott, Georgia. Where said railway crosses said public road is near the foot of a hill. To the right of said public highway, as a traveler approaches said crossing from the west, the hill is of such elevation as to prevent him from seeing a train approaching from the point east of said crossing. Said public road whereon said Larsen was traveling and approaching said crossing from the west is in a cut three or four feet deep. The embankment of said cut and the elevation of said hill preclude travelers from seeing a train approaching said crossing from the east. Said railway to the east of said crossing is likewise in a cut for some distance; and this fact keeps a traveler, approaching said crossing from the west, from seeing and hearing an approaching train. There is likewise an embankment to the right of said public road as it approaches said crossing, which prevents a traveler approaching the same from seeing and hearing the approach of a train from the east. Said W. T. Larsen was not acquainted with the public road and with the location of said public road and said railway as to each other, not having traveled the same before said date. On approaching said crossing he was prevented from seeing and hearing the approach of said passenger-train of said company by reason of the facts hereinbefore stated. Said public road approaches said crossing in a cut with an embankment to its right, as already stated, and on the left there is a ditch, leading from said public road to the said ditch of the road-bed of said railway. This ditch at the point of intersection with the railway is about ninety feet from the crossing. Between said ditch and said crossing there are a stump, a branch, and other obstructions, on the left of said public highway. On the right of said public road and near to said public crossing are a telephone pole and said embankment. These obstructions on both sides of said public road, on the right of way of said railway and within fifty feet of said crossing, prevent a traveler in an automobile, or other vehicle, from turning to the left or the right to prevent a collision with any train of said company, passing over said crossing; and these obstructions prevented the said W. T. Larsen from cutting to one side in order to escape a collision with said west-bound passenger-train. Said W. T. Larsen was traveling at a rate of speed not exceeding twelve miles per

hour until he got within eighty-nine feet of said crossing, when he discovered said west-bound passenger-train rapidly approaching. He immediately applied his brakes to his autombolie, and brought it almost to a stop as the train reached said crossing. He furthermore turned his automobile to the right, down the side of the track of said railway, and almost escaped entirely a collision with said passenger-train. The engine and tender of said passenger-train struck and collided with the left front wheel of said automobile and threw and hurled him from said automobile to the ground and under said train, whereby he was killed. His left arm and right foot were cut off by the wheels of said train, his body was torn and lacerated, and his skull crushed; from which wounds he shortly died.

The defendant filed a general demurrer, alleging, that the petition set forth no cause of action, and that it showed on its face that the plaintiff was not entitled to recover. There was also a special demurrer on various grounds. The court overruled the general demurrer, and sustained some of the grounds of the special demurrer and overruled others.

The evidence for the plaintiff appears to have fully substantiated all the material allegations of negligence herein mentioned. C. W. Turner, who was an occupant of the automobile, testified substantially to all the facts set forth in the petition. According to his evidence, the train, on passing the crossing where the collision occurred, maintained a speed of thirty or forty miles per hour, and despite the fact that the tender of the locomotive was derailed on account of the collision, the train continued to run for a distance of 800 feet from the crossing before it could be brought to a stop. He further testified that no signal of any sort was given by the locomotive before reaching the crossing. This witness testified that in his opinion the automobile, had it not collided with the tender of the locomotive, would have been brought to a stop within five or six feet beyond the crossing. On cross-examination he stated, as his opinion, that the cross sign-post or danger signal at the crossing could have been seen at a distance of 150 yards up the road from the direction in which the crossing was approached, and that the automobile, running at the speed testified to, prior to the accident, could have been brought to a standstill within a distance of 100 feet.

The only other evidence offered, relating to the accident, was the testimony of Mrs. Anna Horton, who stated that she lived about 300 yards from the crossing where the collision occurred, and that she saw the train right after it had passed the signal-post on its approach to the crossing; that the whistle of the locomotive was not blown as it reached the blow-post, but was blown one time only,— about half way between the blow-post and the crossing; that the train was going unusually fast, probably at a rate of thirty-five miles per hour, and that she was attracted by its making a most unusual noise. Whether the signal referred to by her was given after the danger to the decedent had been discovered, and the unusual noise referred to was occasioned by an attempt to stop the train after that time, is a matter of conjecture only. There was evidence showing that the earnings of decedent at the time of his death, amounted to $2,500 per year, with the reasonable prospect of increased earning capacity, and that his health at that time was good.

No evidence was introduced on behalf of the defendant, and a motion for nonsuit having been made and refused, at the conclusion of the plaintiff's testimony, the case was submitted to a jury, who found for the plaintiff in the sum of $15,000. Counsel for the defendant made a motion for a new trial upon the usual grounds, and upon the further ground that the court erred in charging conjunctively sections 4426 and 2781 of the Civil Code of 1910, the charge of the court being as follows: "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the complainant and the agent of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him. If the plaintiff's husband by ordinary care could have avoided the consequences to himself caused by the defendant's alleged negligence, plaintiff is not entitled to recover, but in other cases the defendant would not be relieved, although the plaintiff's husband may in some way have contributed to the alleged injury sustained." Error is assigned on the ground that in charging these two sections together, the court confused and misled the jury, caused them to believe that the negligence or want of ordinary care on the part of deceased was to be

considered only in the reduction of damages; that the jury, being misled by said charge, did not consider that if it appeared that the deceased, by the exercise of ordinary care, could have prevented the injury, although the railroad was negligent, the plaintiff could not recover, and that the stating of these two sections of the code in immediate connection and without explanation confused two separate and distinct defenses, and was calculated to mislead the jury.

1. While at common law, if the negligence of the plaintiff contributed to the injury, he could not recover, in this State the liability of railroad companies for injury done by them to persons or property has been modified so that the law governing such liability is as follows: Under the provisions of section 2781 of the Civil Code, no person shall recover damages from a railroad company for injury done to himself or his property, where the same is done by his consent or is caused by his own negligence. If the complainant and the agent of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him. The doctrine usually referred to as that of contributory negligence is not the law of this State, inasmuch as that term, properly used, expresses not such negligence as would diminish, but only such negligence as would preclude a recovery. The doctrine which here obtains can be and is more accurately and properly designated as that of comparative negligence. *Western & A. R. Co.* v. *Ferguson,* 113 *Ga.* 708, 712 (39 S. E. 306, 54 L. R. A. 802); *Christian* v. *Macon Ry. & Light Co.,* 120 *Ga.* 314 (47 S. E. 923); *Ga. & Fla. Ry.* v. *Newton,* 140 *Ga.* 463 (79 S. E. 142); *Louisville & N. R. Co.* v. *Stafford,* 146 *Ga.* 206 (91 S. E. 29). Thus, if the plaintiff and the defendant were both negligent, the former can recover, unless his negligence was equal to or greater than the negligence of the defendant; except that this rule is further qualified by section 4426 of the Civil Code, in which it is provided that "if the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." *Western & A. R. Co.* v. *Ferguson,* supra; *Georgia Railroad Co.* v. *Neely,* 56 *Ga.* 540, 544; *Central R. Co.* v. *Harris,* 76 *Ga.* 501, 508; *Americus &c. R. Co.* v. *Luckie,* 87 *Ga.* 6 (13 S. E. 105); *Briscoe* v. *Southern Railway Co.,* 103 *Ga.*

27

224, 227 (28 S. E. 638) ; *Central Ry. Co.* v. *Dorsey,* 106 *Ga.* 826, 828 (32 S. E. 873) ; *Hopkins* v. *Southern Railway Co.,* 110 *Ga.* 85, 88 (35 S. E. 307) ; *Atlanta &c. R. Co.* v. *Loftin,* 86 *Ga.* 43, 45 (12 S. E. 186) ; *Brunswick &c. R. Co.* v. *Gibson,* 97 *Ga.* 489, 497 (25 S. E. 484) ; *Cain* v. *Macon &c. R. Co.,* 97 *Ga.* 298 (22 S. E. 918) ; *W. & A. R. Co.* v. *Bradford,* 113 *Ga.* 276 (38 S. E. 823). The rule stated in section 4426, however, applies only where the defendant's negligence became apparent to the person injured, or where, by the exercise of ordinary care, he could have become aware of it, and he thereafter failed to exercise ordinary and reasonable diligence to avoid the consequences of the defendant's negligence. *Brunswick R. Co.* v. *Gibson,* supra; *Central R. Co.* v. *Attaway,* 90 *Ga.* 656, 661 (16 S. E. 956) ; *Comer* v. *Barfield,* 102 *Ga.* 485, 489 (31 S. E. 89) ; *Macon &c. R. Co.* v. *Holmes,* 103 *Ga.* 655, 658 (30 S. E. 563) ; *W. & A. R. Co.* v. *Ferguson,* supra; *Atlanta &c. R. Co.* v. *Lovelace,* 121 *Ga.* 487 (49 S. E. 607) ; *Atlanta &c. Ry. Co.* v. *Gardner,* 122 *Ga.* 82 (4), 98 (49 S. E. 818) ; *Central Ry. Co.* v. *Pelfry,* 11 *Ga. App.* 119, 122 (74 S. E. 854) ; *Collins* v. *Augusta-Aiken Ry. &c. Co.,* 13 *Ga. App.* 124, 128 (78 S. E. 944) ; *Williams* v. *Southern Ry. Co.,* 126 *Ga.* 711 (55 S. E. 948).

Thus, it will be seen that a plaintiff can recover partial damages for injuries caused by the negligence of a railway company, notwithstanding his own fault, which might in some less degree have contributed thereto, provided that he exercised ordinary and reasonable caution to avoid the consequences of the defendant's negligence, after it had or should have become apparent. Ordinarily the question of negligence, both on the part of the plaintiff and the defendant, is an issue to be determined by the jury, but where the plaintiff's petition shows on its face that he has no right to recover, and this question is raised by general demurrer, it is the duty of the court to sustain the demurrer and dismiss the petition. *Ga. Pacific R. Co.* v. *Richardson,* 80 *Ga.* 727 (7 S. E. 119) ; 2 Hopkins on Personal Injuries (2d ed.), 1074, § 521, citing *Hill* v. *L. & N. R. Co.,* 124 *Ga.* 243 (52 S. E. 651) ; *Freeman* v. *Savannah Electric Co.,* 130 *Ga.* 449, 451 (60 S. E. 1042). If, therefore, the allegations of the plaintiff's petition should themselves disclose the fact that the collision was brought about by the violation, on the part of the decedent, of the statute of this State

governing the operation of automobiles, such fault on his part would constitute negligence per se, and, if such negligence was the proximate cause of the injury, would bar a recovery in a suit by his widow.

The act of 1910, governing the operation of automobiles in this State (Acts 1910, p. 90, sec. 5), provides, that "no person shall operate a machine on any of the highways of this State as described in this act at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of such highway, so as to endanger the life or limb of any person or the safety of any property, and upon approaching a bridge, dam, high embankment, sharp curve, descent, or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour." It is insisted by counsel for the plaintiff in error that the petition of the plaintiff shows on its face that the injury was occasioned by the violation on the part of the decedent of these provisions of the act, and that he was guilty of negligence per se in driving the automobile down the descent referred to, without having it under control, and at a rate of speed greater than six miles per hour; and further, that he was guilty of negligence per se under the statute in that he in like manner approached the railroad crossing where the accident occurred. The act of 1910 regulating the driving of automobiles on the public highways in no wise supersedes the law governing the liability of a railway company for injuries to persons driving such machines, other than to render the nonobservance of certain duties therein imposed negligence per se. The act recognizes that the drivers of automobiles have equal right to the use of public highways with other persons, but it provides that this right shall be exercised in the manner by it prescribed, and the failure to comply with the requirements prescribed by the act constitutes negligence as a matter of law. *Sheppard* v. *Johnson*, 11 *Ga. App.* 280 (75 S. E. 348). But we know of no distinction recognized by law whereby the plaintiff's right to recover is affected in a greater or less degree according to whether negligence on his part follows as a matter of law from a fact proved, or whether the question of negligence as well as the fact itself is a matter to be determined by a jury. The difference between negligence per se and other negligence is in the

mode of establishing negligence. In the one case the law itself establishes negligence when a certain act or omission is proved, while ordinarily the question whether a proved fact constitutes negligence is left to the determination of a jury. Whether negligence be established in the one mode or in the other makes no difference in its legal effect when established.

Analyzing the provisions of section 5 of this law regulating the driving of automobiles, we find the requirements of that section to be as follows: (1) No person shall operate a machine on any of the highways of this State at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the highway. (2) No person shall operate a machine on any highway of this State so as to endanger the life or limb of any person or the safety of any property. (3) On approaching a bridge, dam, high embankment, sharp curve, descent, or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour. It is manifest that in the first two provisions of this section, as we have divided it for the purpose of discussion, it is a question of fact for the jury, and not one of law for the court, whether a person is operating such a machine at a rate of speed greater than is reasonable and proper, or so as to endanger life, limb, or property. In the cases of *Empire Life Ins. Co.* v. *Allen,* 141 *Ga.* 413 (81 S. E. 120), and *Hayes* v. *State,* 11 *Ga. App.* 371 (75 S. E. 523), these provisions are declared to be too uncertain and indefinite in their terms to be capable of penal enforcement, although the measure of care prescribed in the act is sufficient to furnish a rule of civil conduct. *Strickland* v. *Whatley,* 142 *Ga.* 802 (83 S. E. 856). Coming now to the third division of section 5, we find it provided, among other requirements, that the driver of an automobile, in approaching a descent or railroad crossing, shall have his machine under control, and operate it at a rate of speed not greater than six miles per hour. The statute being penal, a strict construction is required. See *Renfroe* v. *Colquitt,* 74 *Ga.* 618; *Mayor &c. of Atlanta* v. *White,* 33 *Ga.* 229. It will be observed that the statute provides that on *approaching* a descent in the road, or a railway crossing, the rules prescribed must be observed. The statute does not in fact require that a speed of six miles per hour shall be maintained while the machine is making

the descent of a hill or incline; and we think this construction is based upon good reason; the object of the statute, in this respect, being to require the traveler, on approaching the crest of a hill, and before commencing the descent, to slow down his car in order to ascertain whether some other person, whom he could not theretofore discern, might be using the highway on its incline. If, however, this requirement of the law be complied with, there is nothing therein that makes it necessary to maintain such a reduced speed down the incline, in the absence of some special cause therefor. We therefore do not think that as a matter of law the fact that the decedent might have descended the incline just prior to the accident at a greater speed than six miles per hour could be adjudged negligence per se. The statute, however, further requires that in approaching a railway crossing, such reduced speed shall be maintained, and that the driver of the machine must in such case have his car under control.

Counsel for the plaintiff in error analogizes these requirements of the automobile statute to those governing railroads under the blow-post law (Civil Code, § 2675). That section provides as follows: "There must be fixed on the line of said roads and at a distance of four hundred yards from the center of each of such road crossings, and on each side thereof, a post, and the engineer shall be required, whenever he shall arrive at either of said posts, to blow the whistle of the locomotive until it arrives at the public road, and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road." It is argued by counsel that the clear intent of the automobile statute necessarily requires the driver of such a machine, in approaching a railroad crossing, to be able to stop his car before reaching the crossing, should it at any time be necessary to do so to prevent a collision, just as it is specifically provided in the case of trains. It will be observed that the statute applying to railway companies prescribes the exact distance at which the engineer shall commence to check his train, and specifically requires him to be able to stop it before reaching the crossing, should circumstances require, whereas the statute for the regulation of the approach of automobiles to such crossings is indefinite as to the point at which the speed shall be reduced, and does not by its terms require that the driver shall be able to stop

the automobile before reaching the crossing. It is strongly insisted, however, that the only reasonable purpose of the statute in regulating the speed of the car and requiring it to be under control on approaching a crossing must be to require the driver to be able to stop it before reaching the crossing, should emergency require.

Under the petition in the instant case the car was driven at a rate of speed of about twelve miles per hour until it approached within eighty-nine feet of the railroad track, after which, it appears, the driver of the car used every possible endeavor to avoid a collision with the train, and so reduced the speed of the automobile as to almost prevent the collision. The contention of the plaintiff in error is that the speed should have been reduced in approaching the crossing at a distance greater than eighty-nine feet, for the reason that the facts set forth show that eighty-nine feet was not a sufficient distance in which the car could be brought to a stop, and therefore, as a matter of law, the court should have held that the car approached the crossing at an excessive speed, and was not at that time under the control of the driver. This contention is earnestly and ably presented by counsel, and the conclusion we have reached has not been arrived at without difficulty. If, however, we should accept the reasoning of counsel in this contention and decide that the petition should have been dismissed, because, as a matter of law, the conduct of the plaintiff constituted such negligence per se as would bar his recovery, then it would indeed be difficult to conceive where, under this principle, the driver of an automobile would be entitled to recover by virtue of any degree of negligence on the part of the railroad in violating its duties pertaining to the approach of trains to public crossings. The logic of such a ruling would be to require such a driver in all cases and at all times to be in a position to bring his car to a stop before arriving at a crossing, and in fact actually so to do whenever necessary to avoid the consequences of the company's negligence. Such a construction takes into account nothing of the doctrine of comparative negligence, takes from the jury all right to determine whether the negligence of the decedent constituted the proximate cause of the injury, and leaves out of account all question as to the exercise of proper prudence on the part of the decedent after the negligence of the defendant had been, or should have been, discovered.

We are therefore brought to the conclusion that the opinion rendered on November 18, 1916, by our Supreme Court, in the case of *L. & N. R. Co.* v. *Stafford,* supra, must control our decision in the present case. In the case just referred to the facts outlined are in many respects identical with those of the instant case. In that case error was assigned on a refusal of the court to charge as follows: "If you find, from the evidence in this case, that the plaintiff did not have his automobile under control, or was operating it at a rate of speed greater than six miles per hour, at the time he approached the railroad crossing, then I charge you that in either event he would not be in the exercise of ordinary care for his safety, and would not be entitled to recover in this case, and your verdict would be for the defendant." Mr. Justice Atkinson, in the opinion, speaks as follows: "The request to charge does not properly apply these principles to the facts of the case. The railroad company might be negligent per se in violating the city ordinance and the statute in regard to running trains over public crossings, and the plaintiff might be negligent per se in violating the statute in regard to running automobiles while approaching and crossing railroad tracks, but it would not necessarily follow that the negligence of the plaintiff would be the proximate cause of the injury, or that it would be as great as that of the defendant, or that the plaintiff by the exercise of ordinary care could have avoided the consequence of the defendant's negligence after it commenced or became apparent, or the circumstances would have afforded reason to apprehend its existence. The question of negligence and the degree of negligence of the respective parties would be for the jury under the particular facts. The railroad company could be guilty of negligence per se, under the city ordinance, in failing to toll the bell and in running its train over the crossing at a speed slightly over five miles per hour; but the jury could say that it would be guilty of a greater degree of negligence by failing to toll the bell, and in running the train over the crossing at twenty-five or thirty miles per hour. And the plaintiff would be guilty of negligence per se in approaching the crossing at a greater rate of speed than the statute prescribed, but the degree of his negligence would in all cases depend on the circumstances. If there was no train in the vicinity, no danger from disobeying the statute would exist. If not otherwise negligent, his negligence would consist

in disobeying the statute.  As the circumstances might enhance the danger his negligence would increase; but whether it should bar a recovery under the circumstances must be left to the jury. So also the time when the negligence of the defendant came into existence and was apparent or should have been apprehended, and whether after it became so the plaintiff by the exercise of ordinary care could have avoided the consequences thereof to himself, were questions for the jury.  The evidence reported in the statement of facts, concerning the circumstances in which the injury was committed, was not sufficient, under the application of the foregoing principles, to take the case from the jury.  As the requested charge, if given, would have invaded the province of the jury, it was properly refused."  For the reasons which we have stated and in the light of the decision of our Supreme Court just quoted from, we think the trial judge did not err in overruling the general demurrer.  The request of counsel, under the provisions of section 6355 of the Civil Code, that the Supreme Court be asked to overrule or modify its ruling in the case of *L. & N. R. Co.* v. *Stafford,* supra, is denied.

2.  The error complained of in the matter of overruling the special demurrers not having been in any wise argued by counsel in their briefs, under the rulings of this court these contentions must be treated as abandoned.

3.  There was no error committed by the trial judge in the charge complained of in the fourth ground of the amended motion for new trial.  Mr. Justice Hill, in the case of the *Central of Ga. Ry. Co.* v. *Brown,* 138 *Ga* 107 (3), 110 (74 S. E. 839), has thoroughly discussed the question there raised, and, after distinguishing certain earlier decisions of the Supreme Court, has shown such a charge to be without error.

4.  The testimony amply supported the verdict, and there was no error in refusing to set same aside for lack of evidence, or on the ground that the amount of the recovery was excessive.

*Judgment affirmed.  Broyles, P. J., and Bloodworth, J., concur.*