### 18187.   REED v. SOUTHERN RAILWAY COMPANY.

JENKINS, P. J. 1. "When those in charge of a railway-train neglect to comply with the statutory precautions in approaching a highway, and a person on the crossing is struck and injured, the only defenses open to the company are, that the injury was done by the consent of the person injured; or that by the observance of ordinary care he could have avoided the injury; or, in mitigation of damages, that his negligence contributed to it." *Bryson* v. *Southern Ry. Co.*, 3 *Ga. App.* 407, 408 (59 S. E. 1124); *Harden* v. *Ga. R. Co.*, 3 *Ga. App.* 344 (59 S. E. 1122).

2. Where a person injured by the running of a railroad-train could, "by the exercise of ordinary care for his own safety, have avoided the consequences to himself of the defendant's negligence after it came into existence and was known to him, or could have been discovered by the exercise of ordinary care, an action for damages against the railroad company on account of negligence will not lie." *Central of Ga. Ry. Co.* v. *Tapley*, 145 *Ga.* 792 (5) (89 S. E. 841); Civil Code (1910), §§ 2781, 4426.

3. "In this State it is not per se negligent for one not aware of the approach of the train to attempt to cross the track without stopping, looking, or listening." *Bryson* v. *Southern Ry. Co.*, supra; *Tennessee &c. Ry. Co.* v. *Neely*, 27 *Ga. App.* 491 (2), 494 (108 S. E. 629); *Davis* v. *Whitcomb*, 30 *Ga. App.* 497 (5), 498 (118 S. E. 488). Accordingly, such an attempt to cross the track by one not aware of the approach of a train can not, as a matter of law, be said to constitute such contributory negligence as will bar a recovery. If, however, such a person, before attempting to cross the track, actually did stop, look, and listen, and if upon doing so he must necessarily have discovered the approaching train, it would be immaterial whether the railroad company was negligent in that those in charge of the train did not comply with the statutory requirement to give warning of its rapid approach, by blowing the whistle, since such warning could have done no more than apprise him of something he must necessarily have already known. *Murphy* v. *Ga. Ry. &c. Co.*, 146 *Ga.* 297 (4), 299 (91 S. E. 108).

4. It can not be said, with any degree of moral or reasonable certainty, that if the plaintiff in the instant case had stopped, looked, and listened, as he swore he did, before entering upon the crossing, he must necessarily have seen or heard the approaching train. The evidence with reference to the growth of cane and other vegetation along the right of way is somewhat vague. It is not clear how close to the cane the plaintiff was at the time he claims to have stopped to look and listen for the train, but, from the evidence as adduced, if he was then close enough to such obstruction, it could have prevented his seeing the headlight of the rapidly approaching train; and if the train was then

Negligence, 29 Cyc. p. 635, n. 68; p. 640, n. 13, 16; p. 641, n. 23.

Railroads, 33 Cyc. p. 968, n. 8; p. 969, n. 10; p. 985, n. 3, 4; p. 1003, n. 96; p. 1038, n. 4; p. 1040, n. 9, 10; p. 1084, n. 3; p. 1097, n. 88; p. 1099, n. 98; p. 1117, n. 91; p. 1121, n. 19; p. 1122, n. 23; p. 1128, n. 64.

coasting down grade, as the evidence in the record might seem to indicate, such might constitute a special reason why he might not have been able to hear its approach. Under the general rule that questions of negligence, including contributory negligence, questions as to what negligence constitutes the proximate cause of the injury, and questions as to whether the plaintiff could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence after it had' or should have become known, are such as lie peculiarly within the province of the jury to determine (*L. & N. R. Co.* v. *Stafford*, 146 *Ga.* 206 (91 S. E. 29)'; *Central of Ga. Ry. Co.* v. *Larsen*, 19 *Ga. App.* 413 (91 S. E. 517); *Central of Ga. Ry. Co.* v. *Barnett*, 35 *Ga. App.* 528, 530 (134 S. E. 126)), this court will not hold, as a matter of law, that the injury to the plaintiff was proximately caused by reason of his lack of ordinary care in entering upon the track as he did.

5. The evidence offered as to the speed of the train a distance of one mile or one mile and a half before reaching the crossing at which the accident occurred was not irrelevant, since the intervening distance might have been traversed in a very short time, not more than two minutes, at the speed at which it was stated the witness would testify the train was traveling. The exclusion of this testimony, therefore, was error. *Savannah &c. Ry. Co.* v. *Flannagan*, 82 *Ga.* 579 (2), 588 (9 S. E. 471, 14 Am. St. R. 183).

6. Under the foregoing rulings, the court erred in granting a nonsuit.

        *Judgment reversed. Stephens and Bell, JJ., concur.*

                    DECIDED DECEMBER 17, 1927.

Action for damages; from Whitfield superior court—Judge Pittman. April 5, 1927.

              STATEMENT OF FACTS BY JENKINS, P. J.'

Reed brought two damage suits against the Southern Railway Company, one for personal injuries, and the other for the value of two mules alleged to have been killed and a wagon and harness alleged to have been damaged by the defendant company. By order of court the two cases were consolidated and tried as one, the allegations of negligence on the part of the defendant and the facts in each case being the same.

The plaintiff alleges that while he was driving his team across the defendant's track at a public crossing during the nighttime, the team was struck by a passenger-train of the defendant, running at a speed of about fifty miles an hour, both of the mules being killed, the wagon and harness damaged, and the plaintiff severely injured. It is charged that the defendant was negligent in operating its train at an excessive rate of speed, in not sounding an alarm, bell or whistle when approaching the crossing, in not using due care in approaching the crossing so as to avoid in-

jury to the property of the plaintiff, and in that the engineer operating the locomotive failed to keep and maintain a vigilant and constant lookout ahead and along the track, and failed to have the engine under control and to stop it before striking the plaintiff's team. It is alleged that the plaintiff was in the exercise of due care, that he stopped and listened for a train before going upon the crossing, but that, on account of its excessive rate of speed and the failure to give any warning of its approach, he did not ascertain its approach until the mules had reached the track just prior to the collision. The proof for the plaintiff showed that he was traveling in his wagon, drawn by the mules, along the public road running parallel to the track of the defendant and going north, that the train was traveling south, that the public road bends sharply to the west to cross the railroad track, that the public road which the plaintiff had been traveling was parallel to the railroad for a distance of more than half a mile, that the railroad-track is perfectly straight for a mile or a mile and a half north of the crossing, and for a half mile south of the crossing, that there was a patch of cane from seven to ten feet high growing along the railroad right of way on the side on which the plaintiff was traveling and beyond the bend in the road referred to, and that the public-road bed along which he approached the crossing is three or four feet lower than the tracks of the railroad. There was evidence from a witness offered by the plaintiff that he was familiar with the locality, and that there was no obstruction such as would prevent a person traveling north along the public road from seeing a train approaching from the north for a distance of a mile or more up to the station of Varnell, but "if it was grown up in cane there, and the right of way in weeds, that would make a difference." This witness further testified that "if the headlight was above the cane, and went over the cane, the cane would not have had anything to do with it." There was other evidence for the plaintiff that the growing cane and some uncut weeds along the right of way would obstruct the view of such a person traveling along the public road in the direction in which the plaintiff was traveling. There was further evidence for the plaintiff that the train sounded its whistle at the station of Varnell, about a mile and a half north of the crossing, but that it was not sounded on approaching the crossing at the time of

the accident. The evidence is not very clear as to whether the train was coming up grade or down grade when it reached the crossing. It would seem from the testimony of one witness that it climbed up grade for a major portion of the distance from Varnell to the crossing, and then began a down grade some distance from the crossing, and that at the time it approached the crossing it was running down grade. The plaintiff testified that a short distance below the crossing a passing freight-train frightened his mules, causing them to shy, and breaking a part of the harness, and that he stopped his team and repaired the harness, and then listened for another approaching train, that he then heard nothing, and proceeded to the crossing, that after rounding the bend in the public road approaching the crossing he again stopped his team and looked and listened for an approaching train, that he heard nothing and saw nothing and proceeded onto the crossing, that just as his mules got on the track he heard the approaching train and saw the headlight of the locomotive, which "looked to be very dim on that night," that he heard no bell or whistle, and that he tried to pull the mules back off the track, but was unable to do so, and the locomotive struck them, inflicting the injuries to him and the damage to his property sued for. Another witness for the plaintiff testified that when the train passed through Varnell the headlight was bright. The plaintiff offered to prove by another witness that the train was running sixty miles an hour when it passed Varnell, a mile or a mile and a half north of the crossing, but on objection of the defendant this testimony was excluded as irrelevant and immaterial, and exception is taken to that ruling. Another witness for the plaintiff testified, apparently without objection, that in his best judgment the train was running forty-five to fifty miles an hour when it passed Varnell. At the conclusion of the evidence for the plaintiff, on motion of the defendant, the court granted a nonsuit, to which the plaintiff excepted.

*William E. & Gordon Mann,* for plaintiff.

*Maddox, Maddox & Mitchell, W. M. Sapp,* for defendant.