27918. ALABAMA GREAT SOUTHERN RAILWAY
COMPANY *v.* GROSS.

DECIDED JANUARY 31, 1940.

*R. C. Pittman, McClure, McClure & Hale*, for plaintiff in error.
*Baker & Townsend*, contra.

SUTTON, J. W. M. Gross brought suit against Alabama Great Southern Railway Company, to recover damages for personal injuries to his property because of the alleged negligence of the defendant; the petition alleging that he was a farmer, living on the west side of the defendant's railroad at a point about half way between New England and Trenton in Dade County, Georgia, and owning farm lands on the east side of the railroad; that on September 5, 1938, about eight o'clock in the morning, he was driving his team of mules, hitched to a wagon upon which he was riding, from his home on the west side of the railroad to the farm lands on the east side thereof; that in crossing the railroad he was using a public crossing located about half way between the railroad stations of New England and Trenton, known as "Sutton crossing;" that along the south side of the highway, a distance of thirty feet west of the crossing to a distance of ninety feet west thereof, there are growing cedar trees that obscure the view of a person using said highway as the crossing is approached from the west side of the railroad; that from a distance of sixty feet west of the crossing up to the crossing the highway inclines sharply up grade; that on the morning aforesaid the crossing was and had been for several days under construction and was in a bad state of repair, having thereon large, sharp-edged stones which had not been beaten up and packed down on the occasion of the injury to plain-

tiff as hereinafter set out; that said condition of the crossing was a negligent condition, due to the negligent and careless manner in which the defendant by its officers, agents, and employees maintained the crossing; that said negligence and other negligence of the officers, agents, and employees of the defendant, as hereinafter set out, constituted the direct and proximate cause of the injuries and damage to the plaintiff; that at the time and place in question a work-train of the defendant was approaching the crossing from the south at a fast and reckless rate of speed in excess of forty miles per hour; that at the place on said railroad for several hundred feet south of the crossing the railroad is either level or slightly down grade to the crossing, and is straight; that said train was approaching the crossing at the time in question with little noise, and sounded no whistle or other alarm before the time the mules of plaintiff appeared on the track ahead of the train; that as plaintiff was approaching the crossing he looked both north and south when he reached the foot of the incline, up which he had to drive to cross the railroad, but saw no train coming from either direction, the cedar trees hereinbefore mentioned obscuring his view at this point as he looked southward; that when his mules started up the incline leading to the crossing they took the bits in their teeth, and, being slightly "cold shouldered," rushed up the incline to the tracks; that plaintiff, a few feet before he reached the crossing, saw the train about 250 yards to the south, and tugged on the reins, and by vocal admonitions to his team endeavored to stop it before reaching the track, but was unable to do so; that when the mules got on the sharp rocks located in the middle of the crossing the rocks hurt their feet and ankle joints, and they refused to go farther across the track, and plaintiff tugged on the lines and did all in his power to pull the mules backward off the track and out of the path of the approaching train; that for a distance of approximately 250 yards his plight was plainly visible to the engineer, fireman, train crew, and such other officers, agents, and servants of the defendant as were on the train; that notwithstanding this fact the engineer, fireman, train crew, and other officers, agents, and servants on said approaching train failed to stop it before reaching the crossing, failed to slacken its speed approaching said crossing, and failed to do anything to avert the locomotive striking the mules and wagon of the plaintiff; that the locomotive

and train came onto the crossing and struck the mules and front part of the wagon of plaintiff, knocking both mules considerably southward and killing them, and knocking the wagon of plaintiff sideways and alongside said track for a distance of some thirty feet, the impact of which blow knocked plaintiff from his wagon to the ground below, injuring his head, arms, neck, back, shoulders, and body severely and permanently. He alleged that the defendant, by its officers, agents, and employees in the operation of the train, was negligent in the following ways: (a) by failing to have erected at a point 400 yards from the center of its intersection at grade with the public road, on which the collision took place, a blowpost to indicate the existence of such crossing; (b) by failing to give the signal of the approach of the train to said crossing at a point 400 yards from the crossing, that is, the engineer and other em-ployees of the defendant operating the locomotive engine failed to blow through the whistle two long and two short blasts at intervals of five seconds between each blast; (c) by failing to sound any alarm on approaching the crossing; (d) by failing, in the opera-tion of the train, after reaching the blowpost farthest removed from the crossing and/or coming within 400 yards of the crossing, to keep and maintain a constant lookout along the track ahead of the engine; (e) by failing to bring said train to a stop at the time when plaintiff's mules first reached the crossing and the plight of plaintiff was plainly visible to the train crew, or would have been had said train crew, in the exercise of reasonable care and dili-gence, been looking; (f) by failing to slacken the speed of the train and sound an alarm of its approach under the circumstances set out; (g) by failing, through its officers, agents, and employees, to keep in order the public road where the collision took place at the point where the public road crosses defendant's railroad, large stones painful to the feet and ankles of the mules being left thereon as hereinbefore alleged; (h) by running the train at a rate of speed which was fast and reckless, to wit, in excess of forty miles per hour; (i) by failing, when the mules and wagon of plaintiff ap-peared on the crossing ahead of the engine, to sound the alarm whistle, ring the bell, shut down the brakes, slow the speed of the train, and failing to do anything else to either warn defendant or prevent striking defendant and his property. He alleged that he was free from fault at the time of the collision; that the injuries

and damage were the direct and proximate result of the negligence of the defendant, its officers, agents, and employees, as alleged in detail; that the plaintiff sustained certain described injuries; that he was damaged in the sum of $400 on account of loss and damage to his mules, wagon, and harness, that he incurred medical expense and doctor's bills in the sum of approximately $50; that his former earning capacity of approximately $1200 was reduced to practically nothing, for all of which he asked judgment in the sum of $2400. The exception is to the overruling of the defendant's general demurrer.

The petition charges negligence per se in the defendant's failure to have and maintain, at a point 400 yards from the crossing, a blowpost, and in failing to do the things required by the Code, § 94-506, as to blowing the whistle and approaching a public crossing, as well as other negligence in failing to prevent striking the plaintiff's mules and wagon, although the plight of the plaintiff was plainly visible to the crew of the train, or in the exercise of ordinary care and diligence should have been visible; negligence in failing to keep in order the crossing where the collision took place, the defendant leaving thereon large and sharp stones painful to the feet and ankles of the plaintiff's mules; negligence in running the train at a fast and reckless rate of speed in excess of forty miles per hour. It is alleged that the injuries and damage complained of are the direct and proximate result of the alleged negligence of the defendant. The plaintiff in error contends that, even assuming that the defendant was negligent in any respect, the proximate cause of the plaintiff's injury and damage is shown by the petition to have been the failure of the plaintiff to use ordinary care for his own safety, and the preponderating peculiar vice of the mules. "When those in charge of a railway train neglect to comply with the statutory precautions in approaching a highway, and a person on the crossing is struck and injured [by the train], the only defenses open to the company are, that the injury was done by the consent of the person injured; or that by the observance of ordinary care he could have avoided the injury; or, in mitigation of damages, that his negligence contributed to it." *Bryson* v. *Southern Ry. Co.,* 3 *Ga. App.* 407 (59 S. E. 1124) ; *Reed* v. *Southern Ry. Co.,* 37 *Ga. App.* 550 (140 S. E. 921) ; *Clements* v. *Central of Georgia Ry. Co.,* 41 *Ga. App.* 310 (152 S. E. 849). Of

course, where one who is injured by the running of a railroad train could, "by the exercise of ordinary care for his own safety, have avoided the consequences to himself of the defendant's negligence after it came into existence and was known to him or could have been discovered by the exercise of ordinary care, an action for damages against the railroad company on account of negligence will not lie." *Central of Georgia Ry. Co.* v. *Tapley,* 145 *Ga.* 792 (5) (89 S. E. 841) ; *Reed* v. *Southern Ry. Co.,* supra ; *Clements* v. *Central of Georgia Ry. Co.,* supra.

It appears from the petition that at a distance of ninety feet from the crossing to a point thirty feet therefrom growing cedar trees obscured the view of the plaintiff to the south as he approached the crossing ; that for a distance of thirty feet before reaching the crossing an opening permitted such a view ; that from a distance of sixty feet west of the crossing the highway inclined sharply up grade ; that when plaintiff reached the foot of the incline he looked both north and south, but saw no train approaching, the cedar trees obscuring his view ; that from that point the mules, being slightly "cold shouldered," took the bits in their teeth and rushed up the incline ; that plaintiff, a few feet before he reached the crossing, saw the approaching train 250 yards to the south, tugged on the reins, and by vocal admonitions to his team endeavored to stop them, but without success, before the mules got on the sharp rocks located in the middle of the crossing where they had been left by the defendant ; that the sharp rocks hurt the feet and ankles of the mules, and they refused to go farther ; that the plaintiff tugged on the lines and did all in his power to pull them backwards from the track and out of the path of the train, which, however, ran onto the team with damaging results as described in the petition. We can not say as a matter of law that in what the plaintiff did or failed to do he was negligent, and that his conduct, notwithstanding the alleged negligence of the defendant, was the proximate cause of his injury and damage. He could not see the approaching train for sixty feet while proceeding along the highway with growing cedar trees on his right. Had he looked while traveling the last thirty feet to the crossing, he could have seen it. But, according to the petition, the mules "rushed" for a distance of sixty feet towards the crossing ; and although in the last thirty feet the approaching train might have been seen under normal conditions of

driving, a jury might reasonably determine that under the circumstances the plaintiff was not negligent in not detecting the approach of the train before he was within "a few feet" of the crossing, or that, if negligent, his negligence was less than that of the defendant. Furthermore, we can not say as a matter of law that the refusal of the mules to proceed across the sharp stones was otherwise than would have been the conduct of any mule, and amounted to what is sometimes referred to as the "vice" of an animal, which plaintiff in error contends was the proximate cause of the collision; or that had the defendant, through its servants, blown the locomotive whistle as required by law the plaintiff would not have been able to stop his mules before they reached the incline and began to "rush" towards the crossing. Under the well-established rule that questions of negligence, including the question of contributory negligence, questions as to what constitutes the proximate cause of an injury, and whether or not the plaintiff could, by the exercise of ordinary care and diligence, have avoided the consequences to himself of the defendant's negligence after it became known or should have been apparent to him, are peculiarly for the jury's determination, except in plain and indisputable cases, this court can not hold as a matter of law that the plaintiff's injury and damage in the present case were proximately caused by his own negligence or by any "vice" of his mules. The petition set forth a cause of action against the defendant, and the court did not err in overruling the general demurrer.

*Judgment affirmed. Stephens, P. J., and Fellon, J., concur.*